1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEANNA L. FORBUSH
Nevada Bar No. 6646
dforbush@foxrothschild.com
COLLEEN E. MCCARTY
Nevada Bar No. 13186
cmccarty@foxrothschild.com
**FOX ROTHSCHILD LLP**
1980 Festival Plaza Drive, Suite 700
Las Vegas, NV 89135
Telephone:  (702) 262-6899
Facsimile:  (702) 597-5503
*Attorneys for Plaintiff, Bridget Ward*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| BRIDGET WARD,<br><br>           Plaintiff,<br><br>vs.<br><br>CITY OF HENDERSON, NEVADA; and DOES I through X, inclusive,<br><br>           Defendant. | Case No.:<br><br>**COMPLAINT FOR DISCRIMINATION BASED ON SEX AND/OR RELIGION, RETALIATION, TORTS AND INJUNCTIVE RELIEF**<br><br>Jury Trial Demanded |

Plaintiff, Bridget Ward ("Officer Ward" or "Plaintiff"), by and through her attorneys of record, Deanna L. Forbush, Esq. and Colleen E. McCarty, Esq. of Fox Rothschild LLP, hereby alleges and complains against the City of Henderson, Nevada ("COH" or "Defendant") as follows:

**JURISDICTION AND VENUE**

1.      This is a civil action for damages and injunctive relief brought by Officer Ward based on both Federal and State anti-discrimination statutes and State common law tort claims.

2.      Officer Ward's statutory claims arise under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.,* as amended ("Title VII"), and its State law counterpart, the Nevada Equal Opportunities in Employment Act, codified at NRS 613.310, *et seq.*  Officer Ward's tort claims arise under Nevada common law.

3.      On or about November, 2018, Officer Ward submitted a detailed intake questionnaire to the Equal Opportunity Commission ("EEOC") detailing her claims against her employer, COH.

1

1   Pursuant to the work sharing agreement between the EEOC and its state counterpart, the Nevada Equal

2   Rights Commission ("NERC"), Officer Ward's filing fulfilled her obligation to file administrative

3   charges under both Federal and State law.

4          4.      In her intake questionnaire, Officer Ward set forth facts demonstrating that she has

5   been, and continues to be, subjected to illegal discrimination and retaliation on the basis of sex, as a

6   transgender woman, and/or on the basis of religion, as an agnostic, while employed with COH's Police

7   Department ("HPD").  On March 27, 2019, Officer Ward signed her formal Charge of Discrimination

8   ("Charge"), which was prepared by NERC.

9          5.      On February 12, 2020, Officer Ward filed an update to her Charge with the investigator

10  assigned to her case by the EEOC, which set forth additional facts demonstrating COH's continued

11  illegal discrimination and retaliation against her on the basis of sex, as a transgender woman, and/or

12  on the basis of religion, as an agnostic.

13         6.      On or about October 6, 2020, Officer Ward received her Notice of Right to Sue from

14  the EEOC.  Thus, Officer Ward has fully complied with all prerequisites under the applicable Federal

15  and State statutes that enabled her to file this lawsuit.

16         7.      This Court has jurisdiction over this Federal action pursuant to 28 U.S.C. § 1331.

17         8.      This Court has supplemental jurisdiction over Officer Ward's State law claims pursuant

18  to 28 U.S.C. § 1367.

19         9.      Venue is proper in the District of Nevada, pursuant to 28 U.S.C. § 1391(b) and (e), as

20  all claims arose in this District, and Defendant conducts business in this District.

21         10.     Officer Ward demands a trail of her action by jury.

22                                            **PARTIES**

23         11.     Plaintiff Bridget Ward is, and at all relevant times was, an individual residing in Clark

24  County, Nevada.  At the time of the adverse employment actions complained of herein, Officer Ward

25  was employed by and served as a Police Officer with HPD.

26         12.     Defendant, City of Henderson, Nevada is, and at all relevant times was, a political

27  entity formed and operated pursuant to Nevada Revised Statutes.  HPD is, and at all relevant times

28  was, a department of the City of Henderson.

Active\116510602.v1-12/23/20

1   13.   COH is an employer subject to the discrimination and retaliation prohibitions of Title

2   VII and NRS 613.310, *et seq.*

3   14.   The true names, identities or capacities, whether individual, corporate, political,

4   associate, partnership or otherwise of the Defendants herein designated as DOES 1 through X,

5   inclusive, are unknown to Officer Ward at this time and are therefore sued by such fictitious names.

6   Officer Ward is informed and believes and thereon alleges that each of the fictitiously named DOES

7   are legally responsible, either intentionally, negligently, or in some other actionable manner, for the

8   events and happenings hereinafter referred to, and thereby legally caused the discrimination,

9   harassment, retaliation, torts and damages hereinafter alleged.

10   15.   Officer Ward will seek leave of this Court to amend this Complaint and insert the true

11   names and capacities of the fictitiously named DOES when the same have been ascertained and will

12   further ask leave to join said Defendants in these proceedings.

13   **GENERAL ALLEGATIONS**

14   16.   Officer Ward is a transgender woman who is currently employed by COH as a Police

15   Officer.

16   17.   In or about August 2008, COH hired Officer Ward, and she underwent all necessary

17   training and certifications.  Officer Ward is highly regarded by her peers and has earned several

18   commendations for her performance in the line of duty during her tenure with HPD.

19   18.   Officer Ward was born biologically male and identified as male until in or about June

20   2016, when she disclosed to both HPD's chain of command and COH's Department of Human

21   Resources ("HR") that she was transgender and intended to transition from male to female.

22   19.   Shortly before Officer Ward's transition, in or about April 2016, Officer Ward was

23   selected for a specialized assignment in HPD's Problem Solving Unit ("PSU").  The selection was a

24   promotion from her assignment as a Patrol Officer and was accompanied by an increase in pay.  Prior

25   to being selected, Officer Ward had twice previously applied for the position and had been passed over

26   in favor of more qualified candidates.

27   20.   At the time of Officer Ward's transition, COH had no policies, procedures, or

28   guidelines in place to specifically address the needs of transgender employees or employees

3

1  transitioning in the workplace.  COH also had no employee training regarding transgender persons,

2  gender identity and expression, or the gender transition process.

3       21.     Since her transition in 2016, Officer Ward has been subjected to discrimination and

4  retaliation at her workplace, which continues as of the date of this filing.  Both COH and HPD have

5  fostered a culture that condones disparate treatment on the basis of gender, gender identity and

6  expression, and religion, permits an atmosphere charged with misogyny and sexual misconduct, and

7  rewards those who protect the "good ole boy system" to the detriment of other employees.

8       22.     As Officer Ward's transition progressed, in or about July 2017, Officer Ward met with

9  a representative of HR to discuss available health insurance benefits for gender affirming medical

10  procedures.  During the meeting, the HR business partner used offensive language to refer to the

11  procedures, and when Officer Ward attempted to correct and educate the HR business partner about

12  her use of the offensive terms, the HR business partner refused to modify her language.  This is just

13  one example of the ignorance, inflexibility and, at times, open hostility Officer Ward experienced

14  when seeking assistance from COH's HR.

15       23.     In or about September 2017, COH hired LaTesha Watson ("Chief Watson") to serve as

16  its Chief of Police, following the separation of former Chief of Police, Patrick Moers, and Deputy

17  Chief, Robert Long, for the alleged sexual harassment of HPD employees.  Chief Watson was

18  ostensibly hired to reform HPD, which had a reputation as a "good ole boys club."

19       24.     During Chief Watson's public swearing in ceremony, she made several religious

20  references.  Throughout her tenure with HPD, Chief Watson also repeatedly and publicly expressed

21  her Christian religious beliefs to both sworn and civilian staff, and she appeared to be guided by those

22  beliefs, and those who shared them, in her management decisions.  Officer Ward, who is agnostic, was

23  highly offended by this conduct and observed that Chief Watson favored those employees who shared

24  her religious beliefs over those who did not.

25       25.     In or about November 2017, COH conducted harassment-prevention training intended

26  to cover sexual orientation and gender identity and expression.  Rather than utilize materials developed

27  by the HPD Diversity Committee, which Officer Ward served on as a member, COH elected to have

28  NERC present the training.  The NERC training relied on a cartoon unicorn, dubbed "Danny the

4

Gender Unicorn," to explain transgender persons. Officer Ward found the training, which was clearly developed for children, highly offensive to both her and other LGBTQ persons. The training was also mocked within HPD as the "Gay Unicorn Training."

26. Shortly after the NERC training took place, also in November 2017, Officer Ward became aware of a complaint filed with HPD Internal Affairs and HR regarding a derogatory and offensive statement made by HPD Sergeant Matthew Murnane about Officer Ward and her gender identity and expression. Chief Watson was advised of the complaint, which was substantiated by Internal Affairs some six months later.

27. In or about November 30, 2017, Officer Ward met with HR to discuss the above-referenced complaint, the offensive harassment-prevention training, and other issues related to the discriminatory conduct she continued to experience on the job.

28. Early in her administration, Chief Watson met with the members of the PSU, including Officer Ward, to discuss the unit's purpose and trajectory. Chief Watson indicated that in the event she elected to dissolve the PSU, the tenure of its members would be considered for future specialized assignments.

29. In or about April 2018, all members of the PSU, including Officer Ward, were notified that Chief Watson was disbanding the unit. Shortly thereafter, Officer Ward became aware of four available positions with the HPD Property Crimes Unit and submitted her application for the specialized assignment.

30. In or about May 2018, Chief Watson issued General Order GO-002-18, which purportedly established a new selection process for specialized assignments.

31. Following an interview with the Selection Board, in or about June 2018, Officer Ward learned that she was one of four officers chosen by the board for the specialized assignment. However, when the Selection Board forwarded its recommendations to HPD management, including Chief Watson, Officer Ward's selection was inexplicably overturned in favor of a male officer who did not have the recommendation of the Selection Board, or any previous qualifying experience. Officer Ward was the only officer chosen by the Selection Board for the Property Crimes Unit at that time who was subsequently denied the promotional opportunity.

5

1

2

3

4

32.     When Officer Ward inquired as to why she was denied the promotion, she was advised by the supervisor of the Property Crimes Unit, who was also the Chairperson of the Selection Board, that she was his choice for the specialized assignment, but that HPD management overruled his selection in favor of a less qualified candidate.

5

6

7

8

9

10

11

12

33.     Officer Ward filed a formal complaint with HR alleging that she was denied the above-referenced promotional opportunity on the basis of gender identity and expression and specifically named Chief Watson, Deputy Chief, Thedrick Andres, Deputy Chief, Michael Denning, and Chief of Staff, David Burns, as adverse parties.  In follow-up to her HR complaint, in or about November 2018, COH advised Officer Ward by letter that she was denied the promotional opportunity due to a "preexisting initiative communicated to the command team to give specialized assignments to more officers that had not previously been afforded the opportunity."  Significantly, this initiative was not reflected in General Order GO-002-18.

13

14

15

16

17

18

19

20

34.     Around the same time, the only other known transgender police officer employed by COH, Asher Walter ("Officer Walter"), was also denied a promotional opportunity for a specialized assignment.  Like Officer Ward, Officer Walter was chosen by the Selection Board to fill one of the vacant positions, but his selection was overruled by HPD management.  Contrary to Officer Ward's experience, however, on information and belief, Officer Walter was denied the promotional opportunity because he did not have previous experience in a specialized assignment.  COH failed to address this blatant inconsistency in the implementation of Chief Watson's purported initiative, which operated to the detriment of the only two known transgender police officers serving in the HPD.

21

22

35.      Because Officer Ward was denied the promotional opportunity, she was reassigned to the Patrol Division and received a cut in pay.

23

24

25

26

27

28

36.     In or about September 2018, Officer Ward responded to a domestic violence call during which she was required to use deadly force and was herself shot in the foot by a fellow police officer's errant round.  As a result of the shooting incident, Officer Ward suffers from a partial, yet permanent disability in her foot, in addition to the emotional trauma associated with the use of deadly force.  But for COH's discriminatory selection process, Officer Ward would not have been serving as a Patrol Officer and assigned to the domestic violence call.

6

1    37.    While in the hospital for treatment of her gunshot wound, without invitation Chief

2    Watson and other members of the HPD command staff visited Officer Ward.  During the visit, Chief

3    Watson made numerous religious references to Officer Ward including "the lord was guiding you,"

4    and "I am going to pray for your soul."  Officer Ward found these statements to be highly offensive

5    and related to her transgender expression.  Officer Ward formally complained to HR about this conduct

6    and provided the name of a witness to corroborate her complaint.  HR, however, failed to interview

7    the witness and instead merely accepted Chief Watson's version of events.

8    38.    In or about October 2018, HPD Chief of Staff Burns sent a department-wide email

9    listing the police officers who had responded to the October 1, 2017 Route 91 shooting.  The list

10   identified Officer Ward by her biological, pre-transition name, a practice known as "dead naming,"

11   instead of by her legal name, Bridget Ward.  Officer Ward experienced this conduct as retaliation for

12   the HR complaint she previously filed against Chief of Staff Burns.

13   39.    Also during this time, Chief of Staff Burns further retaliated against Officer Ward by

14   accusing her of wrongdoing in connection with the above-referenced domestic violence deadly force

15   incident.  Officer Ward, however, was cleared by Internal Affairs, which determined there was no

16   merit to Chief of Staff Burns' allegations.

17   40.    In or about November 2018, the HPD Commendation Board recommended that Officer

18   Ward receive the Medal of Honor and Purple Heart awards for her conduct in the line of duty during

19   the domestic violence deadly force incident.  HPD, however, deviated from the Commendation

20   Board's recommendation and without explanation, declined to award the Purple Heart to Officer

21   Ward.

22   41.    Officer Ward formally complained to HR regarding the retaliatory denial of the Purple

23   Heart award.  On information and belief, HR did nothing to investigate her complaint for more than

24   seven months. When Officer Ward inquired further, she was advised that she did not receive the award

25   because she was shot by a fellow officer and not a suspect, which she was told was consistent with the

26   Commendation Program policy.  The Commendation Program policy, however, makes no such

27   distinction, and Officer Ward is not aware of any other officer who was denied the Purple Heart under

28   similar circumstances.

Active\116510602.v1-12/23/20

42.    In or about January 2019, Chief Watson, Deputy Chief Denning, Deputy Chief Andres and Chief of Staff Burns held a formal briefing with Officer Ward's squad, following the publication of a news article titled, "Transgender Henderson Police Officers Work to Close LGBT Divide," which appeared in the *Las Vegas Review Journal* and featured Officer Ward.  During the briefing, Chief Watson demonstrated hostility toward Officer Ward and stated, among other remarks, that "those who have spoken to the media are liars."  Officer Ward formally complained to HR about this conduct.

43.    In or about April 2019, COH terminated Chief Watson for cause for a myriad of reasons including, but not limited to, the use and reliance upon religious materials in the workplace in violation of COH policy, the failure to work with other COH departments on policy changes and recruitments, and the cultivation of an atmosphere of distrust and division within HPD.

44.    Following Chief Watson's termination, in or about May 2019, HR advised Officer Ward that although it did not find she had been discriminated against, it would offer her the Property Crimes Unit specialized assignment she had previously been denied.  HR advised Officer Ward that COH reversed Chief Watson's previous hiring decision because of unspecified "violations" that had occurred.  The HR Business Partner assigned to HPD, Joseph Cabanban, offered Officer Ward $1,200.00 in lieu of back pay to release all claims.

45.    Officer Ward accepted the assignment with the Property Crimes Unit, but she declined the offer to release all claims.

46.    In or about July 2019, Deputy Chief Andres was sworn in as the new Henderson Police Chief.  Chief Andres came to HPD from Texas with former Chief Watson and succeeded her following her termination.  Similar to the swearing in ceremony of Chief Watson, Chief Andres' ceremony included religious references and a blessing of the command staff by a religious leader on COH property.  Officer Ward formally complained to HR about this conduct.

47.    In or about August 2019, the President of the Henderson Police Officers Union, Officer Gary Hargis, commented to Officer Ward that she "has some sexy legs."  This was not the first time Officer Hargis made this comment to Officer Ward, and, in response, she made it clear that his comments were not welcome. Following this exchange, Officer Hargis touched Officer Ward's right leg above the knee in a sexual manner while the two were seated at a conference table, and he again

8

1  verbally commented on her legs.  Officer Ward formally complained to HR about this conduct.

2    48.    In or about January 2020, members of HPD advised Officer Ward of a transphobic

3  cartoon posted by HPD Captain, Eric Buck, on his Facebook page.  The cartoon was favorably

4  commented on or "liked" by numerous HPD employees, including Peggy Webster, the Administrative

5  Assistant to Chief Andres.  Henderson City Manager, Bristol Ellington, also commented on the

6  cartoon, however he expressed that it was not funny.  Officer Ward felt targeted by the cartoon, as one

7  of only two known transgender police officers in the workplace, which added to the hostile work

8  environment she had experienced.

9    49.    As of the date of this filing, HR has failed to properly investigate and corroborate any

10  of Officer Ward's complaints and, upon information and belief, has taken no action to remedy the

11  ongoing discrimination and retaliation against her.  Mr. Cabanban has expressed overt hostility toward

12  Officer Ward such that she feels intimidated and discouraged from seeking assistance from HR.  These

13  actions, and others, have had the effect of stigmatizing Officer Ward as a complainer, or otherwise

14  engendered hostility toward her by her co-workers and other COH employees.

15    50.    In or about July 2019, when Officer Ward requested to be assigned a different HR

16  Business Partner, she was advised that employees do not get a choice of HR Business Partners.  Despite

17  Officer Ward's repeated requests that Mr. Cabanban no longer communicate with her, he has

18  continued with these communications.

19    51.    As a result of the ongoing discrimination and retaliation against her, Officer Ward has

20  suffered and continues to suffer severe emotional distress.

21  **FIRST CAUSE OF ACTION**

22  **Violation of Title VII of the Civil Rights Act of 1964,**
**42 U.S.C. 2000e-2(a), as amended – Discrimination Based on Sex/Gender**

23

24    52.    Officer Ward repleads, realleges, and incorporates by reference each and every

25  allegation in paragraphs 1 through 51, above, as though fully set forth herein.

26    53.    Officer Ward is a transgender woman entitled to protection under Title VII of the Civil

27  Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*

28    54.    Defendant COH is an employer that has a legal obligation, pursuant to Title VII, to

1    maintain a workplace free of unlawful discrimination on the basis of sex.

2    55.    Title VII prohibitions against discrimination on the basis of sex encompass both

3    discrimination on the basis of sex and gender identity and expression.  Title VII prohibits COH as an

4    employer from discriminating against a transgender employee on all of the following bases:  (i)

5    because he or she has expressed their gender in a non-stereotypical fashion, or (ii) because the

6    employer is uncomfortable with the fact that the person has transitioned or is transitioning from one

7    gender to another, or (iii) because the employer does not like the fact that the employee is identifying

8    as transgender.

9    56.    Despite these Federal law requirements, and the broader Nevada law asserted below,

10   COH subjected Officer Ward to different terms and conditions of employment because of her sex,

11   specifically her status as a transgender person, known through her gender identity and expression.

12   57.    COH's illegal discriminatory and disparate treatment of Officer Ward on the basis of

13   sex includes, but is not limited to, the following: (i) failing to have policies, procedures, and guidelines

14   in place at the time of Officer Ward's transition to provide for an educated, respectful and dignified

15   response to the process; (ii) failing to provide credible, age-appropriate training to COH employees to

16   deter and prevent discrimination, harassment and retaliation against transgender employees such as

17   Officer Ward; (iii) failing to have HR timely, thoroughly and credibly investigate and address Officer

18   Ward's complaints of discrimination, harassment and retaliation based on sex; and (iv) permitting and

19   then ratifying a hostile work environment where other employees were allowed to harass, humiliate

20   and embarrass Officer Ward based on her gender identity and expression.

21   58.    Following Officer Ward's transition and after she pursued numerous complaints

22   regarding HPD's discrimination against her, COH denied Officer Ward a promotional opportunity she

23   was selected for by the HPD Selection Board and instead selected a lesser qualified male candidate

24   with no prior specialized assignment experience.  On information and belief, COH denied Officer

25   Ward the promotional opportunity on the basis of her gender identity and expression.

26   59.    But for the fact that Officer Ward was discriminated against and denied the promotional

27   opportunity, she would not have been on regular patrol assignment in September 2018, where she was

28   required to use deadly force and was herself shot by a fellow officer.

10

60.     By engaging in these actions, COH violated Federal law including, but not limited to, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2(a).

61.     As a direct and proximate result of COH's violations of Title VII, Officer Ward has suffered, is suffering, and will continue to suffer damages.  Pursuant to Title VII, Officer Ward is entitled to be made whole and fully compensated for all damages and injuries suffered, including back pay, compensatory and punitive damages in an amount to be determined at the time of trial.

62.     It was necessary for Officer Ward to retain the services of an attorney, and pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(k), she is entitled to recover reasonable attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**Violation of Title VII of the Civil Rights Act of 1964,**
**42 U.S.C. 2000e-2(a), as amended – Discrimination Based on Religion**

63.     Officer Ward repleads, realleges, and incorporates by reference each and every allegation in paragraphs 1 through 62, above, as though fully set forth herein.

64.     Officer Ward is an agnostic entitled to protection under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*

65.     Defendant COH is an employer that has a legal obligation, pursuant to Title VII, 42 U.S.C. § 2000e, *et seq.,* as amended, to maintain a workplace free of unlawful discrimination on the basis of religion.

66.      Title VII prohibitions against discrimination on the basis of religion encompass treating employees differently based on their religious beliefs or practices, or lack thereof, in any aspect of employment.  Title VII prohibits COH as an employer from, among other things, making their employees participate in prayer at work, religious ceremonies, or meetings which open with prayer or other religious ceremonies, or otherwise treat agnostic employees differently than non-agnostic employees.

67.      Despite these Federal law requirements, and the broader Nevada law asserted below, COH subjected Officer Ward to different terms and conditions of employment because of her status as an agnostic person.

68.      COH's illegal discriminatory and disparate treatment of Officer Ward on the basis of

11

religion includes, but is not limited to, the following: (i) conducting meetings that Officer Ward attended that began with prayer and/or where religious beliefs were discussed; (ii) making and/or ratifying management decisions based on religious beliefs that favored non-agnostic employees over agnostic employees; (iii) forcing receipt of unwanted prayer and/or religious commentary on Officer Ward; (iv) failing to have HR timely, thoroughly and credibly investigate and address Officer Ward's complaints of discrimination, harassment and retaliation based on religion; and (v) denying Officer Ward a promotional opportunity she was selected for by the HPD Selection Board and, instead selecting a non-agnostic lesser qualified male candidate with no prior specialized assignment experience.

69.     By engaging in these actions, COH violated Federal law including, but not limited to, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2(a).

70.     As a direct and proximate result of COH's violations of Title VII, Officer Ward has suffered, is suffering, and will continue to suffer damages.  Pursuant to Title VII, Officer Ward is entitled to be made whole and fully compensated for all damages and injuries suffered, including back pay, compensatory and punitive damages in an amount to be determined at the time of trial.

71.     It was necessary for Officer Ward to retain the services of an attorney, and pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(k), she is entitled to recover reasonable attorneys' fees and costs.

### THIRD CAUSE OF ACTION
**Violation of Title VII of the Civil Rights Act of 1964,
42 U.S.C. 2000e-3(a), as amended – Retaliation**

72.     Officer Ward repleads, realleges, and incorporates by reference each and every allegation in paragraphs 1 through 71, above, as though fully set forth herein.

73.     Defendant COH has a legal obligation, pursuant to Title VII, 42 U.S.C. § 2000e, *et seq.*, as amended, to maintain a workplace free of unlawful discrimination, including the prevention of retaliation toward persons such as Officer Ward.  COH failed to fulfill this legal obligation.

74.     In violation of 42 U.S.C. § 20003-3(a), COH retaliated against Officer Ward when she complained of acts she reasonably believed in good faith were discriminatory, when she filed charges

12

1   with NERC, and when she otherwise supported and corroborated the discrimination claims of others,

2   all of which are protected conduct or activity.

3          75.     COH's illegal retaliatory treatment of Officer Ward includes, but is not limited to, the

4   following: (i) refusing to implement procedures and processes to deal respectfully and properly with

5   transgender and/or agnostic employees; (ii) failing to treat Officer Ward with dignity, respect and

6   professionalism and allowing a hostile work environment against her to arise and flourish; and (iii)

7   explicitly and implicitly discouraging Officer Ward from expressing her concerns about discrimination

8   and then retaliating against her when she engaged in protected conduct.

9          76.     Additionally, after Officer Ward began identifying herself as a female transgender

10  person and pursued complaints of her mistreatment internally, Officer Ward was denied a promotional

11  opportunity, despite having been selected pursuant to HPD policy for the specialized assignment.

12  Instead, HPD chose a junior, biologically male, less experienced candidate.  Officer Ward was further

13  denied a commendation, after she pursued complaints with NERC, for her conduct in the line of duty,

14  despite receiving the recommendation of the Commendation Board for the Purple Heart award.

15         77.     Officer Ward's internal complaints and protestations, and her filing of formal charges

16  with NERC, have led to greater hostility towards her and resulted in widespread retaliatory conduct.

17  This may adversely impact her opportunities for advancement in the future and stigmatize her in such

18  a way that she will not be given equal consideration for future promotions.

19         78.     By engaging in these actions, COH violated Federal law including, but not limited to,

20  Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a).

21         79.     As a direct and proximate result of COH's violations of Title VII, Officer Ward has

22  suffered, is suffering, and will continue to suffer damages.  Pursuant to Title VII, Officer Ward is

23  entitled to be made whole and fully compensated for all damages and injuries suffered, including back

24  pay, compensatory and punitive damages in an amount to be determined at the time of trial.

25         80.     It was necessary for Officer Ward to retain the services of an attorney, and pursuant to

26  Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(k), she is entitled to recover

27  reasonable attorneys' fees and costs.

28

Active\116510602.v1-12/23/20

**FOURTH CAUSE OF ACTION**
**Violation of NRS 613.310, *et seq*. – Discrimination Based on Sex/Gender**

81.    Officer Ward repleads, realleges, and incorporates by reference each and every allegation in paragraphs 1 through 80, above, as though fully set forth herein.

82.    Officer Ward is a transgender woman entitled to protection under Nevada's Equal Opportunities for Employment Act, NRS 613.310, *et seq.*

83.    Defendant COH is an employer that has a legal obligation, pursuant to NRS 613.330, to maintain a workplace free of unlawful discrimination on the basis of sex.

84.    Despite explicit provisions in Nevada anti-discrimination statute, COH subjected Officer Ward to different terms and conditions of employment because of her sex, specifically her status as a transgender person, known through her gender identity and expression.

85.    COH's illegal discriminatory and disparate treatment of Officer Ward on the basis of sex includes, but is not limited to, the following: (i) failing to have policies, procedures, and guidelines in place at the time of Officer Ward's transition to provide for an educated, respectful and dignified response to the process; (ii) failing to provide credible, age-appropriate training to COH employees to deter and prevent discrimination, harassment and retaliation against transgender employees such as Officer Ward; (iii) failing to have HR timely, thoroughly and credibly investigate and address Officer Ward's complaints of discrimination, harassment and retaliation based on sex; and (iv) permitting and then ratifying a hostile work environment where other employees were allowed to harass, humiliate and embarrass Officer Ward based on her gender identity and expression.

86.    Following Officer Ward's transition and after she pursued numerous complaints regarding HPD's discrimination against her, COH denied Officer Ward a promotional opportunity she was selected for by the HPD Selection Board and instead selected a lesser qualified male candidate with no prior specialized assignment experience.  On information and belief, COH denied Officer Ward the promotional opportunity on the basis of her gender identity and expression.

87.    But for the fact that Officer Ward was discriminated against and denied the promotional opportunity, she would not have been on regular patrol assignment in September 2018, where she was required to use deadly force and was herself shot by a fellow officer.

14

Active\116510602.v1-12/23/20

88.     By engaging in these actions, COH violated Nevada law including, but not limited to, NRS 613.330.

89.     As a direct and proximate result of COH's violations of NRS 613.330, Officer Ward has suffered, is suffering, and will continue to suffer damages.  Pursuant to NRS 613.432, Officer Ward is entitled to the same legal or equitable relief that may be awarded to a person pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, which includes being made whole and fully compensated for all damages and injuries suffered, including back pay, compensatory and punitive damages in an amount to be determined at the time of trial.

90.     It was necessary for Officer Ward to retain the services of an attorney, and pursuant to NRS 613.432, Officer Ward is entitled to the same legal or equitable relief that may be awarded to a person pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, which includes reasonable attorneys' fees and costs.

### FIFTH  CAUSE OF ACTION
**Violation of NRS 613.310, *et seq*. – Discrimination Based on Religion**

91.     Officer Ward repleads, realleges, and incorporates by reference each and every allegation in paragraphs 1 through 90, above, as though fully set forth herein.

92.     Officer Ward is an agnostic entitled to protection under Nevada's Equal Opportunities for Employment Act, NRS 613.310, *et seq.*

93.     Defendant COH is an employer that has a legal obligation, pursuant to NRS 613.330, to maintain a workplace free of unlawful discrimination on the basis of religion.

94.     Despite explicit provisions in Nevada anti-discrimination statute, COH subjected Officer Ward to different terms and conditions of employment because of her status as an agnostic.

95.     COH's illegal discriminatory and disparate treatment of Officer Ward on the basis of religion includes, but is not limited to, the following: (i) conducting meetings that Officer Ward attended that began with prayer and/or where religious beliefs were discussed; (ii) making and/or ratifying management decisions based on religious beliefs that favored non-agnostic employees over agnostic employees; (iii) forcing receipt of unwanted prayer and/or religious commentary on Officer Ward; (iv) failing to have HR timely, thoroughly and credibly investigate and address Officer Ward's

15

1 complaints of discrimination, harassment and retaliation based on religion; and (v) denying Officer

2 Ward a promotional opportunity she was selected for by the HPD Selection Board and, instead

3 selecting a non-agnostic lesser qualified male candidate with no prior specialized assignment

4 experience.

5      96.     By engaging in these actions, COH violated Nevada law including, but not limited to,

6 NRS 613.330.

7      97.     As a direct and proximate result of COH's violations of NRS 613.330, Officer Ward

8 has suffered, is suffering, and will continue to suffer damages.  Pursuant to NRS 613.432, Officer

9 Ward is entitled to the same legal or equitable relief that may be awarded to a person pursuant to Title

10 VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, which includes being

11 made whole and fully compensated for all damages and injuries suffered, including back pay,

12 compensatory and punitive damages in an amount to be determined at the time of trial.

13      98.     It was necessary for Officer Ward to retain the services of an attorney, and pursuant to

14 NRS 613.432, Officer Ward is entitled to the same legal or equitable relief that may be awarded to a

15 person pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*,

16 which includes reasonable attorneys' fees and costs.

17
### SIXTH  CAUSE OF ACTION
**Violation of NRS 613.310, *et seq*. – Retaliation**
18

19      99.     Officer Ward repleads, realleges, and incorporates by reference each and every

20 allegation in paragraphs 1 through 98, above, as though fully set forth herein.

21      100.    Defendant COH has a legal obligation, pursuant to Nevada's Equal Opportunities for

22 Employment Act, NRS 613.310, *et seq.*, to maintain a workplace free of unlawful discrimination,

23 including the prevention of retaliation toward persons such as Officer Ward.  COH failed to fulfill this

24 legal obligation.

25      101.    In violation of NRS 613.340, COH retaliated against Officer Ward when she

26 complained of acts she reasonably believed in good faith were discriminatory, when she filed charges

27 with the NERC, and when she otherwise supported and corroborated the discrimination claims of

28 others, all of which are protected conduct or activity.

Active\116510602.v1-12/23/20

1    102.    COH's illegal retaliatory treatment of Officer Ward includes, but is not limited to, the

2  following: (i) refusing to implement procedures and processes to deal respectfully and properly with

3  transgender and/or agnostic employees; (ii) failing to treat Officer Ward with dignity, respect and

4  professionalism and allowing a hostile work environment against her to arise and flourish; and (iii)

5  explicitly and implicitly discouraging Officer Ward from expressing her concerns about discrimination

6  and then retaliating against her when she engaged in protected conduct.

7    103.    Additionally, after Officer Ward began identifying herself as a female transgender

8  person and pursued complaints of her mistreatment internally, Officer Ward was denied a promotional

9  opportunity, despite having been selected pursuant to HPD policy for the specialized assignment.

10  Instead, HPD chose a junior, biologically male, less experienced candidate.  Officer Ward was further

11  denied a commendation, after she pursued complaints with NERC, for her conduct in the line of duty,

12  despite receiving the recommendation of the Commendation Board for the Purple Heart award.

13    104.    Officer Ward's internal complaints and protestations, and her filing of formal charges

14  with NERC, have led to greater hostility towards her and resulted in widespread retaliatory conduct.

15  This may adversely impact her opportunities for advancement in the future and stigmatize her in such

16  a way that she will not be given equal consideration for future promotions.

17    105.    By engaging in these actions, COH violated Nevada law including, but not limited to,

18  NRS 613.340.

19    106.    As a direct and proximate result of COH's violations of NRS 613.340, Officer Ward

20  has suffered, is suffering, and will continue to suffer damages.  Pursuant to NRS 613.432, Officer

21  Ward is entitled to the same legal or equitable relief that may be awarded to a person pursuant to Title

22  VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, which includes being

23  made whole and fully compensated for all damages and injuries suffered, including back pay,

24  compensatory and punitive damages in an amount to be determined at the time of trial.

25    107.    It was necessary for Officer Ward to retain the services of an attorney, and pursuant to

26  NRS 613.432, Officer Ward is entitled to the same legal or equitable relief that may be awarded to a

27  person pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*,

28  which includes reasonable attorneys' fees and costs.

17

1
2

### SEVENTH  CAUSE OF ACTION
**Negligent Hiring, Training and/or Supervision**

3
4

108.    Officer Ward repleads, realleges, and incorporates by reference each and every allegation in paragraphs 1 through 107, above, as though fully set forth herein.

5
6
7
8

109.    At all times relevant herein, Officer Ward was entitled to a safe, legal and productive work environment.  As Officer Ward's employer, COH had a duty to hire, employ, supervise, manage, and retain only those employees who were fit for those positions and to ensure that they properly exercised the authority and power entrusted to them in the workplace.

9
10
11
12
13
14
15
16
17

110.    COH breached these duties owed to Officer Ward by failing to properly screen, train, control, and oversee their managerial and supervisory employees.  These breaches include, but are not limited to, failing to develop and implement sound management and personnel practices to prevent abusive conduct toward other managerial or subordinate employees; failing to have or failing to evaluate the effectiveness of policies and procedures to prevent unlawful employment practices; failing to set and maintain sound management policies to prevent and remedy mismanagement; and failing to ensure that managers and supervisors understand and comply with all applicable laws, including those which prohibit retaliating against an employee for engaging in protected conduct or that which public policy favors or requires.

18
19

111.    As an actual and proximate result of COH's negligence, Officer Ward has been harmed and is entitled to be compensated for her damages in an amount to be determined at trial.

20
21

112.    It was necessary for Officer Ward to retain the services of an attorney, and she is entitled to reasonable attorneys' fees and costs pursuant to applicable Nevada law.

22
23

### EIGHTH  CAUSE OF ACTION
**Intentional and/or Negligent Infliction of Emotional Distress**

24
25

113.    Officer Ward repleads, realleges, and incorporates by reference each and every allegation in paragraphs 1 through 112, above, as though fully set forth herein.

26
27

114.    COH's conduct described herein was extreme and outrageous, with either the intention of, or the negligent disregard for, causing emotion distress to Officer Ward.

28

115.    Officer Ward suffered, and continues to suffer, severe emotional distress as a result of

18

COH's extreme and outrageous conduct.

116. As a direct and proximate result of COH's intentional and/or negligent acts, Officer Ward has been harmed and is entitled to be compensated for her damages in an amount to be determined at trial.

117. It was necessary for Officer Ward to retain the services of an attorney, and she is entitled to reasonable attorneys' fees and costs pursuant to applicable Nevada law.

**NINTH  CAUSE OF ACTION**
**Injunctive Relief**

118. Officer Ward repleads, realleges, and incorporates by reference each and every allegation in paragraphs 1 through 117, above, as though fully set forth herein.

119. Officer Ward seeks relief, pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(g)(1) and NRS 613.432, in the form of a temporary restraining order, preliminary injunction and permanent injunction, enjoining COH from directly or indirectly continuing to engage in the discrimination, harassment and retaliation described herein.

120. Officer Ward seeks injunctive relief in addition, and as an alternative, to the other forms of relief prayed for herein in the event that no other legal remedy is available to her.

121. As a direct and proximate result of COH's discrimination, harassment and retaliation described herein, Officer Ward has suffered and will continue to suffer immediate and irreparable harm for which there is no adequate remedy at law, and COH must, therefore, be temporarily, preliminarily and permanently enjoined to prevent the ongoing and irreparable harm that Officer Ward suffers.

122. It was necessary for Officer Ward to retain the services of an attorney, and she is entitled to reasonable attorneys' fees and costs pursuant to applicable Nevada law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Bridget Ward respectfully prays that this Court grant her a trial by jury on all appropriate issues and judgment as follows:

1. By declaring the acts and practices of Defendant City of Henderson violate Federal and State laws prohibiting discrimination, harassment and retaliation;

2. By awarding Officer Ward all damages allowed under the aforementioned Federal and

19

Active\116510602.v1-12/23/20

State laws, in an amount to be determined at trial;

3.      By awarding Officer Ward an amount equal to any economic losses, past and future, that she suffered as a result of loss of promotability and advancement opportunities, in an amount to be determined at trial;

4.      By awarding Officer Ward the costs of this action, together with reasonable attorneys' fees and costs, as provided by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-5(k);

5.      By awarding Officer Ward an additional amount to account for any taxes she may be called upon to pay in relation to any awards made herein;

6.      By awarding Officer Ward prejudgment interest as allowed by law;

7.      By awarding Officer Ward injunctive relief; and

8.      By awarding Officer Ward such other and further relief as the Court shall deem just and proper.

Dated this 23rd day of December, 2020.

**FOX ROTHSCHILD LLP**

By:*/s/ Colleen E. McCarty*
DEANNA L. FORBUSH
Nevada Bar No. 6646
COLLEEN E. MCCARTY
Nevada Bar No. 13186
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
Telephone: (702) 262-6899
*Attorneys for Plaintiff, Bridget Ward*

20

Active\116510602.v1-12/23/20