# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

Bridget Ward,

    Plaintiff

v.

City of Henderson, Nevada,

    Defendant

Case No.: 2:20-cv-02331-JAD-NJK

**Order Granting in Part Defendant's Motion to Dismiss and Granting Leave to Amend**

[ECF No. 8]

    Police officer Bridget Ward sues the City of Henderson for violations of 42 U.S.C. § 2000e (Title VII) and its Nevada-law counterpart, as well as for negligent hiring, training, and supervision and the intentional and/or negligent infliction of emotional distress.[1] The City moves to dismiss her claims under Federal Rule of Civil Procedure 12(b)(6),[2] arguing that they are largely barred because she failed to (1) timely file her discrimination claims with the Nevada Equal Rights Commission (NERC) and (2) perfect her Equal Employment Opportunity Commission (EEOC) charge of discrimination to include new allegations of ongoing discrimination. The City also asserts that her claims are inadequately pled, Nevada law immunizes it from claims for negligent supervision and hiring, and Ward has insufficiently alleged physical injury resulting from her emotional distress. The parties also disagree about whether Ward may seek injunctive relief.

    Because Ward properly filed her claims with both NERC and the EEOC and adequately updated her charge of discrimination with reasonably related allegations of ongoing discrimination, I find that Ward may seek redress for the full spectrum of discriminatory conduct

---

[1] ECF No. 1 (complaint).

[2] ECF No. 8 (motion to dismiss).

alleged in the complaint. I also find that Ward has adequately alleged her discrimination and retaliation claims under Title VII and Nevada law. But Ward has not alleged any bad-faith conduct on the City's part that might render it liable for negligent supervision and hiring, fails to allege sufficient injury to sustain a claim for the negligent or intentional infliction of emotional distress, and improperly pleads injunctive relief as an independent cause of action. So I dismiss her negligent-hiring-training-and-supervision and emotional-distress claims with leave to amend, and dismiss her so-called injunctive-relief claim with prejudice.

## Background[3]

Ward is an agnostic, transgender police officer who has long been employed by the City.[4] Despite being well regarded by her peers, Ward faced serious discrimination at work, suffering the jibes and improper conduct of those unacquainted with, or dismissive of, her gender identity and religion.[5] This conduct came to a head in June 2018 when Ward's boss, LaTesha Watson, and the department's management declined to promote Ward—passing over her candidacy in favor of a less-qualified, non-transgender or agnostic individual.[6] While the department insisted that it declined to promote her to give other, less-experienced officers new opportunities, Ward was skeptical; she been recommended for the role and endorsed by the selection committee, and

---

[3] These alleged facts are pulled from Ward's complaint, provided for context, are merely a summary of Ward's allegations, and should not be construed as findings of fact.

[4] ECF No. 1 at ¶¶ 16–17.

[5] *Id.* at ¶¶ 17, 20, 21–22, 25–26 (stating that Ward dealt with human-resources partners who used offensive language to discuss her gender, bore the brunt of harassment-prevention training that infantilized her gender identity and expression, and complained of derogatory comments made about her).

[6] *Id.* at ¶ 31.

another transgender officer (with less experience than Ward) was also not promoted.[7] So Ward accepted a role in a different unit, where she was shot in the line of duty.[8]

Frustrated by the department's hypocrisy and her injury, Ward submitted an intake questionnaire to the EEOC in November 2018, which detailed the department's discriminatory conduct.[9] And on March 27, 2019, Ward signed a formal charge of discrimination, setting forth salient details about Watson's violations of Title VII and Nevada law.[10] Despite filing this charge and seeking agency enforcement, Ward still faced considerable hostility at work— officers made religious and sexual references that offended her; she was denied a purple heart for her service; officers published offensive, transphobic cartoons on their social-media pages; and a department official used her pre-transition name in an email.[11] So Ward sent a follow-up letter to the EEOC on February 12, 2020, alleging additional facts about the department's discriminatory and retaliatory conduct, and received a notice of right to sue.[12] Shortly thereafter, Ward filed a complaint against the City in this court, seeking injunctive relief and damages.[13]

**Discussion**

Rule 8 requires every complaint to contain "[a] short and plain statement of the claim showing that the pleader is entitled to relief."[14] While Rule 8 does not require detailed factual

---

[7] *Id.* at ¶¶ 33–34.
[8] *Id.* at ¶¶ 35–36.
[9] *Id.* at ¶¶ 3–4.
[10] *Id.*
[11] *Id.* at ¶¶ 36–38, 43, 47–48.
[12] *Id.* at ¶¶ 5–6.
[13] *See generally id.*
[14] Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

3

allegations, the properly pled claim must contain enough facts to "state a claim to relief that is plausible on its face."[15] This "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation;" the facts alleged must raise the claim "above the speculative level."[16] In other words, a complaint must make direct or inferential allegations about "all the material elements necessary to sustain recovery under *some* viable legal theory."[17] A complaint that does not permit the court to infer more than the mere possibility of misconduct has "alleged—but not shown—that the pleader is entitled to relief," and it must be dismissed.[18]

I. **Ward's claims are timely.**

The City challenges the timeliness of Ward's claims on multiple grounds. First, it argues that she may seek redress only for discriminatory conduct occurring within 180 days of filing her March 27, 2019, charge of discrimination under 42 U.S.C. § 200e–5(e)(1). Second, it argues that she failed to perfect her March 27, 2019, charge of discrimination, thus precluding her action for discriminatory conduct occurring after that date. Given these constraints, the City maintains that Ward is only entitled to sue for conduct occurring between September 28, 2018, and March 27, 2019. The City is incorrect on both points.

Ward may sue for discriminatory conduct occurring up to 300 days before she filed her November 2018 intake questionnaire with the EEOC. "Discrimination claims under Title VII ordinarily must be filed with the EEOC within 180 days of the date on which the alleged

---

[15] *Twombly*, 550 U.S. at 570.
[16] *Iqbal*, 556 U.S. at 678.
[17] *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1989)) (emphasis in original).
[18] *Id.* at 570.

4

discriminatory practice occurred."[19] But when the claimant first "institutes proceedings" with a state agency that enforces its own discrimination laws—a so-called "deferral" state—then the period for filing claims is extended to 300 days.[20] "If the state or local agency has a 'worksharing' agreement with the EEOC, a complainant ordinarily need not file separately with federal and state agencies"; "[s]he may file her charge with one agency, and that agency will then relay the charge to the other."[21] Or as the Ninth Circuit recently affirmed, in Nevada, a claim "filed with the state agency *or* with the EEOC within 300 days can still be considered timely filed with the other."[22] Contrary to the City's assertions otherwise, Ward did not need to first file her charge with NERC to receive Title VII's more generous 300-day deadline; the "extension period is triggered regardless of whether the complaint was first received by the EEOC or the state."[23] Ward filed her claim with the EEOC in November 2018,[24] thus rendering timely all complained-of conduct that occurred up to 300 days before that date.

Ward's complaints of additional discriminatory conduct occurring after she filed her March 27, 2019, charge of discrimination are also timely. In the Ninth Circuit, "subject[-]matter jurisdiction extends over all allegations of discrimination that either 'fell within the scope of the EEOC's actual investigation or an EEOC investigation [that] can reasonably be expected to grow

---

[19] *Laquaglia v. Rio Hotel & Casino, Inc.*, 186 F.3d 1172, 1174 (9th Cir. 1999) (citing 42 U.S.C. § 2000e–5(e)(1)).

[20] 42 U.S.C. § 2000e–5(e)(1); 29 U.S.C. § 626(d)(2).

[21] *Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843, 1846 (2019).

[22] *Howe v. Washoe Cnty. Sheriff's Office*, 807 F. App'x 683, 684 (9th Cir. 2020) (unpublished) (citing *Mohasco Corp. v. Silver*, 447 U.S. 807, 814–17 (1980)) (emphasis in original).

[23] *Bouman v. Block*, 940 F.2d 1211, 1220 (9th Cir. 1991); *Wiltshire v. Std. Oil Co. of Cal.*, 652 F.2d 837, 839 (9th Cir. 1981); *see also Laquaglia*, 186 F.3d at 1175 ("Like other worksharing agreements, the one between Nevada and the EEOC provides that each agency designates the other as its agent for the purpose of receiving charges.").

[24] ECF No. 1 at ¶ 3.

out of the charge of discrimination.'"[25] "To force an employee to return to the state agency every time [s]he claims a new instance of discrimination in order to have the EEOC and the courts consider the subsequent incidents along with the original ones would erect a needless procedural barrier."[26] Thus, courts are directed to construe EEOC charges, and their relationship to new discriminatory acts, "with the utmost liberality."[27]

Ward lodged at least three documents with the EEOC detailing the City's and its employees' discriminatory conduct—an intake questionnaire; her formal charge, which described Watson's decision to not promote the otherwise-qualified Ward because of Watson's religious and anti-transgender beliefs; and a February 12, 2020, letter that built on those allegations, describing the department's and its employees' additional discriminatory conduct on the basis of gender and religion. Together, these documents are more than sufficient to satisfy Title VII's administrative-exhaustion requirements.[28] Additionally, Ward's later allegations of misconduct are certainly related to her initial complaints, and it seems entirely plausible that the EEOC would follow-up on these claims, given that they contribute to the environment of discrimination over which Ward seeks redress. So I find that her post-March 27, 2019, claims are also timely.

---

[25] *Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 636 (9th Cir. 2002).
[26] *Oubichon v. N. Am. Rockwell Corp.*, 482 F.2d 569, 571 (9th Cir. 1973).
[27] *E.E.O.C. v. Farmer Bros. Co.*, 31 F.3d 891, 899 (9th Cir. 1994).
[28] 29 C.F.R. § 1601.12(b) ("[A] charge is sufficient when the [EEOC] receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the actions or practices complained of.").

## II. Some, though not all, of Ward's claims are sufficiently pled.

### A. Discrimination claims

Ward has adequately alleged discriminatory conduct in violation of Title VII and Nevada law. A prima facie showing of discrimination on the basis of religion or sex requires a plaintiff to allege that (1) she belongs to a protected class, (2) she performed her duties according to the employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) similarly situated individuals outside of her protected class were treated more favorably.[29] While not "every employment decision amounts to an adverse employment action," "termination, dissemination of a negative employment reference, issuance of an undeserved negative performance review[,] and refusal to consider for promotion" can all "constitute an adverse[-]employment action."[30] As the City admits,[31] Ward has adequately alleged such a claim—she states that she did not receive a promotion at work because she is a transgender woman and agnostic, and that others who did not share her personal characteristics and were less qualified than her did receive a promotion. This is sufficient to permit Ward's complaint to proceed past the pleading stage.

### B. Claim for negligent hiring, training, and supervision

The City is immune from Ward's claim for negligent hiring, training, and supervision. A negligent-hiring claim requires a plaintiff to allege that the defendant owed the plaintiff a duty to use reasonable care in the training, supervision, and retention of its employees, and that the

---

[29] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

[30] *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000) (quoting *Strother v. S. Cal. Permanente Med. Grp.*, 79 F.3d 859, 869 (9th Cir. 1996)).

[31] ECF No. 8 at 12 ("Plaintiff's only sufficient allegation that could state a claim for which relief can be granted on the basis of sex discrimination is the PCU promotion.").

7

defendant breached that duty, thus causing the plaintiff's injuries.[32] Nevada law accords the City broad immunity from claims based on "the exercise or performance or the failure to exercise or perform a discretionary function or duty,"[33] which generally includes the hiring and managing of employees.[34] But that immunity is not entirely unbounded; it does not attach where the complained-of conduct "is attributable to bad faith."[35]

Ward has failed to allege facts demonstrating the City's bad-faith conduct, such that she might pierce Nevada's discretionary-immunity shield. In general, a showing of bad faith requires that the defendant's conduct be performed "without a reasonable basis" or with "knowledge or reckless disregard of the lack of a reasonable basis."[36] While Ward extensively describes the discriminatory acts of her colleagues and department, she fails entirely to attribute any bad-faith conduct to the City itself, much less explain how its hiring and supervision of its employees was performed in bad faith. Instead, she points to a formulaic recitation of various breaches committed by the City—none of which specify its bad-faith conduct.[37] But because this deficiency might be remedied, I dismiss Ward's claim with leave to amend.

---

[32] *Hall v. SSF, Inc.*, 930 P.2d 94, 98–99 (Nev. 1996).

[33] Nev. Rev. Stat. § 41.032(1); *see also Martinez v. Maruszczak*, 168 P.3d 720, 729 (Nev. 2007).

[34] *Vickers v. United States*, 228 F.3d 944, 950 (9th Cir. 2000) ("This court and others have held that decisions relating to the hiring, training, and supervision of employees usually involve policy judgments of the type [that] Congress intended the discretionary[-]function exception to shield."); *Univ. of Nev. Sch. of Med. v. Eighth Jud. Dist. Ct.*, 381 P.3d 671 (table) (Nev. 2012) (unpublished) (holding that "supervision of employees" is "a discretionary function entitled to immunity").

[35] *Falline v. GNLV Corp.*, 823 P.2d 888, 891 (Nev. 1991).

[36] *Id.*

[37] *See* ECF No. 11 at 9 (citing ECF No. 1 at ¶ 110).

### C. Claim for negligent infliction of emotional distress

Nevada requires an emotional-distress plaintiff to demonstrate "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress[;] (2) the plaintiff's having suffered severe or extreme emotional distress[;] and (3) actual or proximate causation."[38] In addition, a plaintiff must allege such "serious emotional distress" that it "results in physical symptoms."[39] As the Nevada Supreme Court has long held, "[t]he less extreme the outrage, the more appropriate it is to require evidence of physical injury or illness from the emotional distress."[40]

Ward attempts to satisfy this physical-impact requirement by making the creative argument that her lost promotion meant that she had to perform a different job within the department, which lead to her being shot in the line of duty.[41] She thus argues that she has sufficiently shown both "permanent physical disability and emotional trauma."[42] But this position misconstrues the law's requirements. Ward is not required to show both physical and emotional injury to allege intentional or negligent infliction of emotional distress; Ward must show that her severe emotional distress caused physical symptoms.[43] Ward has not done so. But because Ward might remedy this pleading deficiency, I grant her leave to amend this claim as well.

---

[38] *Star v. Rabello*, 625 P.2d 90, 91–92 (Nev. 1981).
[39] *Chowdhry v. NLVH, Inc.*, 851 P.2d 459, 482 (Nev. 1993).
[40] *Id.* at 483 (quoting *Nelson v. City of Las Vegas*, 665 P.2d 1141, 1145 (Nev. 1983)) (alteration in original).
[41] ECF No. 1 at ¶¶ 33–36.
[42] ECF No. 11 at 10.
[43] *See Chowdhry*, 851 P.2d at 482.

### D. Injunctive relief

Ward also seeks injunctive relief, styling a request for that remedy as an independent cause of action in her complaint.[44] The parties also appear to treat this request as though Ward has somehow moved for a preliminary injunction, and they disagree as to whether she has sufficiently shown irreparable harm and a likelihood of success on the merits.[45] First, it is well-settled that a claim for "injunctive relief" standing alone is not a cause of action; injunctive relief is a remedy.[46] And second, Ward has not moved for an injunction under Rule 65, which might necessitate the showing that the parties discuss.[47] So while I dismiss this so-called claim for injunctive relief with prejudice, Ward may certainly seek that remedy if it is supported by some other separate claim.

### Conclusion

IT IS THEREFORE ORDERED that the City of Henderson's motion to dismiss **[ECF No. 8] is GRANTED IN PART.** Ward's claims for negligent hiring, training, and supervision and intentional or negligent infliction of emotional distress are dismissed without prejudice and with leave to amend. Ward's claim for injunctive relief is dismissed with prejudice and without leave to amend except as otherwise explained in this order.

---

[44] ECF No. 1 at ¶¶ 118–22.

[45] ECF Nos. 8 at 22; 11 at 10–11; 14 at 11.

[46] *See, e.g.*, *Indian Homes Programs, LLC Series III v. Green Tree Servicing, LLC*, No. 2:15-CV-00026, 2015 WL 5132456, at *4 (D. Nev. Sept. 1, 2015); *U.S. Bank Nat'l Assoc. v. Saticoy Bay LLC*, No. 2:16-cv-01346, 2017 WL 277494, at *3 (D. Nev. Jan. 19, 2017); *Tillman v. Quality Loan Serv. Corp.*, No. 2:12-CV-346, 2012 WL 1279939, at *3 (D. Nev. Apr. 2012) ("[I]njunctive relief is a remedy, not an independent cause of action."); *Jensen v. Quality Loan Serv. Corp.*, 702 F. Supp. 2d 1183, 1201 (E.D. Cal. 2010) ("A request for injunctive relief by itself does not state a cause of action.").

[47] Fed. R. Civ. P. 65.

IT IS FURTHER ORDERED that Ward may file an amended complaint consistent with this order **by June 11, 2021.** If she fails to file an amended pleading, Ward's case will proceed only on Ward's discrimination claims.

_____
U.S. District Judge Jennifer A. Dorsey
Dated: May 21, 2021